# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| COTIVITI HOLDINGS, INC. and COTIVITI USA, LLC <br><br> Plaintiffs, <br><br> v. <br><br> GEORGE CARFI and SHEMIKA MOSBY <br><br> Defendants. | Civil Action No.  3:18-cv-01116 <br><br><br><br> JULY 3, 2018 |

## PLAINTIFFS' COMPLAINT

Plaintiffs Cotiviti Holdings, Inc. and its subsidiary Cotiviti USA, LLC (collectively "Plaintiffs" or "Cotiviti"), by and through their undersigned attorneys, Gordon Rees Scully Mansukhani, LLP ("Gordon & Rees"), and for its Complaint against defendants George Carfi ("Defendant Carfi") and Shemika Mosby ("Defendant Mosby") (collectively "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      This is a case involving the theft of Plaintiffs' business. Cotiviti, a leading provider of analytics-driven payment accuracy and spend management solutions focused primarily on the healthcare sector, recently learned that Defendants accepted employment with a direct competitor in violation of the Defendants' restrictive covenant agreements with Cotiviti.

2.      Cotiviti was formed in May 2014 through the merger of Connolly, a leader in retrospective payment accuracy solutions for the healthcare and retail sectors and iHealth Technologies, a leader in prospective payment accuracy solutions for the healthcare sector.

3. As of December 31, 2017, Cotiviti has approximately 3,300 employees – 2,300 employees in the United States and 1,000 international employees.

4. Cotiviti has operations throughout the United States, including operations in Connecticut, Pennsylvania, New York, and Kentucky. It also has operations in Canada and India.

5. Defendants are former employees of Connolly and Cotiviti. Both Defendants had a non-compete agreement contained within their employment contract. Both Defendants in this Action left Cotiviti to work for a direct competitor of Cotiviti. Both Defendants have valuable proprietary information and trade secrets of Cotiviti.

6. With this action, Plaintiffs seek preliminary injunctive relief, compensatory damages against Defendants arising from their contractual, statutory and/or common law violations, and other misconduct including but not limited to, breaches of the Defendants' agreements with Plaintiffs.

## PARTIES

7. Plaintiff Cotiviti Holdings, Inc. is a Delaware corporation with its principal place of business located in Atlanta, Georgia.

8. Plaintiff Cotiviti USA, LLC is a Delaware limited liability company. Cotiviti Holdings, Inc. is the sole member of Cotiviti USA, LLC. Accordingly, for diversity purposes, Cotiviti USA, LLC is considered a citizen of the states of Delaware and Georgia.

9. Defendant Carfi is an individual defendant domiciled in the State of Pennsylvania and is a resident of that state.

10. Defendant Mosby is an individual defendant domiciled in the State of Kentucky and is a resident of that state.

## JURISDICTION AND VENUE

11.     This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) for each claim Plaintiffs have asserted against each Defendant. In addition, Plaintiffs are diverse from each Defendant as they are citizens of different states.

12.     Both Defendants possess valuable proprietary information that belongs to Cotiviti. Their employment with a direct competitor threatens the business of Cotiviti. The damages each Defendant can and will cause Cotiviti by violating their non-compete agreements with Cotiviti far exceed the jurisdictional threshold of $75,000.00.

13.     Venue in this District is proper because the parties consented to this venue based upon forum selection clauses contained in the parties' agreements.

14.     In addition to diversity, Plaintiffs allege violations of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et. seq.* As such, jurisdiction is appropriate over Plaintiffs' federal claim under 28 U.S.C. § 1331. In addition, jurisdiction is appropriate over Plaintiffs' related state law claims under 28 U.S.C. § 1367.

## GENERAL BACKGROUND FACTS

15.     Cotiviti is a leading provider of analytics-driven payment accuracy and spend management solutions, focused primarily on the healthcare sector.

16.     Cotiviti's integrated solutions help improve payment accuracy and deliver high-value health care to patients by joining payers and health care providers.

17.     As health care reimbursements are shifting toward quality of services, procedure outcomes, readmissions, and patient satisfaction, Cotiviti assists health care providers and payers, using its exclusive trade secrets, in measuring the quality and cost of service as well as the patient experience.

18.     Cotiviti leverages its robust technology platform, configurable analytics, proprietary information assets, and expertise in healthcare reimbursement to assist its clients to enhance their claims payment accuracy and health care value-based reimbursements. In doing so, its exclusive trade secrets and algorithms assess, among other things, if a health care provider performed any unnecessary services that lead to low-value care, waste, and unneeded payments.

19.     As physician compensation shifts from fee-for-service towards value-based services and reimbursements, Cotiviti offers its unique services to health care systems, physician practice groups, and post-acute care centers to develop curated networks, to compensate quality care and to recruit top doctors.

20.     Cotiviti works with over sixty (60) healthcare organizations, including a majority of the twenty-five (25) largest U.S. commercial, Medicare and Medicaid management healthcare plans, as well as CMS.

21.     Cotiviti is also a leading provider of payment accuracy solutions to approximately thirty (30) retail clients, including a majority of the ten (10) largest retailers in the United States.

22.     Equian, LLC ("Equian") is a direct competitor of Cotiviti in the field of analytics-driven payment accuracy and spend management solutions for the healthcare sector.

23.     Cotiviti's client information and trade secrets, including its audit processes and concepts, are not generally known to its competitors such as Equian. Cotiviti's audit processes and concepts are trade secrets which are only provided to trusted employees. These audit concepts are developed through the utilization of research and development teams which scour provider contracts, policies, and regulations to develop opportunities for its clients to recover overpayments. Cotiviti has developed these audit processes and concepts over many years and

4

reflects thousands of hours of work and the expenditure of substantial financial resources invested in generating and assisting its clients.

24.     The audit processes and concepts are internal processes that are not known to Cotiviti's clients or competitors. Cotiviti does not share audit processes and concepts with its clients and/or competitors.

25.     Specifically, Cotiviti has implemented controls to block employees from sending emails with attachments to well-known webmail accounts. It also blocks connecting removable media to workstations and copying data. Cotiviti further engages in web filtering to block well-known sites that allow for data exfiltration.

26.     These audit processes and concepts stem from unique integration, compilation, research, and cultivation. The audit processes and concepts allow Cotiviti to save their clients billions of dollars. They are the intellectual property of Cotiviti and foundation of everything Cotiviti does.

27.     If other companies such as Equian could lawfully obtain access to its audit processes and concepts, client data and information, they would pay millions of dollars for the right to do so and the damage to Cotiviti's business and operations would be irreparable.

28.     Equian has recently hired many of Cotiviti's employees, including the two (2) Defendants at issue in this action and additional managers and senior auditors.

**COUNT ONE (Defendant Carfi)**
**(Breach of Contract)**

29.     Plaintiffs incorporate the above allegations as if fully set forth herein.

30.     Defendant Carfi is a former payment accuracy specialist of Cotiviti who regularly and continuously had access to Cotiviti's sensitive confidential information and trade secrets, including its audit concepts, clients, client information, service, and marketing information.

31.     On October 30, 2014, in consideration for employment with Cotiviti, Defendant Carfi signed a "Non-Disclosure, Non-Solicitation and Non-Compete Agreement." A copy of this agreement is attached hereto as **Exhibit A** (hereinafter referred to as the "Carfi Agreement").

32.     As discussed in the Carfi Agreement, as part of his employment, Defendant Carfi was entrusted with "highly sensitive, confidential, restricted, and proprietary information involving Trade Secrets and Confidential Information." **Exhibit A** at p. 2.

33.     To further protect Cotiviti's trade secrets, confidential and other proprietary information, and in consideration for access to such information, the Carfi Agreement contains express non-compete and non-solicitation covenants governing the protection and treatment of Cotiviti's confidential information.

34.     Specifically, at page 4 of the Carfi Agreement it provides:

You agree that during the term of your employment by [Cotiviti] and for a period of two (2) years following the date of termination of such employment for whatever reason, you shall not directly or indirectly, within the Territory, provide substantially similar professional services to that part of any Person engaged in selling or providing any Competitive Services.

35.     In addition, at pages 3-4 of the Carfi Agreement, it provides:

During the term of your employment with [Cotiviti] and for a period of two (2) years following the termination of such employment for whatever reason, you shall not (except on behalf of [Cotiviti]) solicit, either directly or indirectly, any Person: (i) who is a client or who was a client or an actively sought prospective client of [Cotiviti]; (ii) who is located within the Territory (as defined in the attached Exhibit A); (iii) with whom you had Meaningful Business Contact at any time during the two (2) year period ending on the date on which your employment by [Cotiviti] ends (or shorter period, if applicable); (iv) for the purpose of selling or otherwise providing to such client or prospective client, any services or products that are substantially similar to or competitive with any of the services or products provided by [Cotiviti] as of the date of your solicitation or the termination of your employment, whichever is earlier ("Competitive Services"). "Person" means any individual, sole proprietorship, partnership, corporation, limited liability company, joint venture, joint stock company, trust or other entity. "Meaningful Business Contact" means a direct, substantive conference, meeting, correspondence, discussion, or other contact or communication (but not merely a

mass mailing, "cold call" telephone solicitation, incidental meeting at trade shows or conventions or other like incidental contacts), that is intended to result in, lead to, maintain, increase, facilitate, further or otherwise, aid the sale, license or other provision of products or services sold or provided by [Cotiviti].

Upon termination of your employment with [Cotiviti], you agree not to contact a [Cotiviti] Client regarding work performed by you on behalf of [Cotiviti] unless you have received prior written permission from [Cotiviti] to do so.

36.     Defendant Carfi also agreed at page 5 of the Carfi Agreement that:

You expressly agree and understand that the remedy at law for any breach by you of this agreement will be inadequate and that the damages flowing from such breach are not readily susceptible to being measured in monetary terms. Accordingly, it is acknowledged that upon your violation of any provision of this agreement, [Cotiviti] shall be entitled to immediate injunctive relief and may obtain a temporary restraining order and permanent injunction restraining any further breach.

37.     Defendant Carfi also agreed that, upon termination of employment with Cotiviti, he would not solicit employees of Cotiviti to work elsewhere.

38.     Specifically, at page 4 of the Carfi Agreement, Defendant Carfi agreed as follows:

You agree that during the term of your employment by [Cotiviti] and for a period of two (2) years following the termination date of such employment, you will not, either directly or indirectly, (i) solicit any person who is at the time of the solicitation, or was, at any time during the two (2) year period ending on the date on which your employment by [Cotiviti] ends (or shorter period, if applicable), (ii) an employee, agent, or independent contractor of [Cotiviti], (iii) with whom you had business contact in the course of your employment by [Cotiviti], (iv) for the purpose of offering employment to such person within the Territory with an individual or entity which is engaged in providing or selling Competitive Services, (v) for the purpose of providing any services which are substantially similar to the services performed by such person for [Cotiviti].

39.     The parties also agreed and stipulated, at page 5 of the Carfi Agreement, "to the exclusive jurisdiction of the federal or state courts within the State of Connecticut for any action which may be brought under or in connection with this agreement."

40.     Defendant Carfi ignored and violated his obligations to Cotiviti as set forth in the Carfi Agreement.

41.     Specifically, on February 12, 2018, he resigned his employment with Cotiviti, and Defendant Carfi now works for Equian.

42.     After learning of Defendant's intention to join Equian, Cotiviti advised Defendant Carfi, by letter dated June 4, 2018, that he had violated the Agreement by taking a position with Equian. A copy of the June 4, 2018 letter is attached hereto as **Exhibit B.**

43.     Cotiviti requested written assurance by June 11, 2018 that Defendant Carfi would not work for a competitor and that he had returned all documents or electronic data relating to Cotiviti.

44.     Defendant Carfi did not respond to the June 4, 2018 letter and made no assurances.

45.     In addition to the breach of the Carfi Agreement, it would be extremely difficult, if not impossible, for Defendant Carfi to perform any duties for Equian without making use of the confidential, proprietary and trade secret information to which he was exposed during his employment at Cotiviti.

46.     The harm that Cotiviti would suffer if Defendant Carfi were permitted to continue his employment at Equian and make use of Cotiviti's confidential, trade secret, and proprietary information would be irreparable. The value of that confidential, trade secret, and proprietary information is not readily subject to financial valuation, cannot be easily duplicated, and will result in competitive disadvantage to Cotiviti in the hands of a competitor.

47.     In addition, upon information and belief, Defendant Carfi has solicited and encouraged Cotiviti employees to leave Cotiviti for Equian.

48.     By virtue of the foregoing conduct, Defendant Carfi has violated the Carfi Agreement.

49.     Pursuant to the Carfi Agreement, Defendant Carfi agreed that he would not engage in a competing business as defined therein for a period of two years after separation of employment.

50.     Plaintiffs provided consideration for and fully performed their obligations under the Carfi Agreement by, *inter alia*, employment of Defendant and providing him with access to Plaintiffs' confidential and trade secret information.

51.     The Carfi Agreement is valid and enforceable under Connecticut law.

52.     The restrictive covenants contained in the Carfi Agreement are necessary and tailored to protect Plaintiffs' legitimate business interests, including but not limited to goodwill, clients, and confidential and proprietary business information. The Agreement is reasonably limited to the United States, in light of the fact that Cotiviti is an international company with operations throughout the world.

53.     Defendant Carfi breached his obligations under the Carfi Agreement after resigning from Plaintiffs by engaging in a business in direct competition with Plaintiffs.

54.     Upon information and belief, Defendant Carfi's breaches of these covenants continue to this day, and will continue unless and until he is ordered to abide by the obligations to which he agreed when he accepted the Carfi Agreement.

55.     As a direct result of Defendant Carfi's breaches, Cotiviti is suffering and will continue to suffer irreparable injury, including loss of business expectancies, employees, clients, confidential information, and damage to goodwill, for which a remedy at law is inadequate – as Defendant Carfi expressly acknowledged in the Carfi Agreement. Accordingly, Plaintiffs are entitled to injunctive and equitable relief.

56.     In addition, as a consequence of Defendant Carfi's breaches of the Carfi Agreement, Plaintiffs seek actual, consequential, compensatory, and punitive damages, along with reasonable attorneys' fees and costs, in an amount to be determined at trial.

## COUNT TWO (Defendant Mosby)
### (Breach of Contract)

57.     Plaintiffs incorporate the above allegations as if fully set forth herein.

58.     Defendant Mosby was a payment accuracy specialist at Cotiviti, who regularly and continuously had access to Cotiviti's sensitive confidential information and trade secrets, including its audit concepts, clients, client information, service, and marketing information.

59.     On February 24, 2015, in consideration for employment with Cotiviti, Defendant Mosby signed a "Non-Disclosure, Non-Solicitation and Non-Compete Agreement." A copy of this agreement is attached hereto as **Exhibit C** (hereinafter referred to as the "Mosby Agreement").

60.     As discussed in the Mosby Agreement, as part of her employment, Defendant Mosby was entrusted with "highly sensitive, confidential, restricted, and proprietary information involving Trade Secrets and Confidential Information." **Exhibit C** at p. 2.

61.     To further protect Cotiviti's trade secrets, confidential and other proprietary information, and in consideration for access to such information, the Mosby Agreement contains express non-compete and non-solicitation covenants governing the protection and treatment of Cotiviti's confidential information.

62.     Specifically, at page 4 of the Mosby Agreement it provides:

You agree that during the term of your employment by [Cotiviti] and for a period of two (2) years following the date of termination of such employment for whatever reason, you shall not directly or indirectly, within the Territory, provide substantially similar professional services to that part of any Person engaged in selling or providing any Competitive Services.

63.     In addition, at pages 3-4 of the Mosby Agreement, the agreement provides:

During the term of your employment with [Cotiviti] and for a period of two (2) years following the termination of such employment for whatever reason, you shall not (except on behalf of [Cotiviti]) solicit, either directly or indirectly, any Person: (i) who is a client or who was a client or an actively sought prospective client of [Cotiviti]; (ii) who is located within the Territory (as defined in the attached Exhibit A); (iii) with whom you had Meaningful Business Contact at any time during the two (2) year period ending on the date on which your employment by [Cotiviti] ends (or shorter period, if applicable); (iv) for the purpose of selling or otherwise providing to such client or prospective client, any services or products that are substantially similar to or competitive with any of the services or products provided by [Cotiviti] as of the date of your solicitation or the termination of your employment, whichever is earlier ("Competitive Services"). "Person" means any individual, sole proprietorship, partnership, corporation, limited liability company, joint venture, joint stock company, trust or other entity. "Meaningful Business Contact" means a direct, substantive conference, meeting, correspondence, discussion, or other contact or communication (but not merely a mass mailing, "cold call" telephone solicitation, incidental meeting at trade shows or conventions or other like incidental contacts), that is intended to result in, lead to, maintain, increase, facilitate, further or otherwise, aid the sale, license or other provision of products or services sold or provided by [Cotiviti].

Upon termination of your employment with [Cotiviti], you agree not to contact a [Cotiviti] Client regarding work performed by you on behalf of [Cotiviti] unless you have received prior written permission from [Cotiviti] to do so.

64.     Defendant Mosby also agreed in page 5 of the Mosby Agreement that:

You expressly agree and understand that the remedy at law for any breach by you of this agreement will be inadequate and that the damages flowing from such breach are not readily susceptible to being measured in monetary terms. Accordingly, it is acknowledged that upon your violation of any provision of this agreement, [Cotiviti] shall be entitled to immediate injunctive relief and may obtain a temporary restraining order and permanent injunction restraining any further breach.

65.     Defendant Mosby also agreed that, upon termination of employment with Cotiviti, she would not solicit employees of Cotiviti to work elsewhere.

66.     Specifically, at page 4 of the Mosby Agreement, Defendant Mosby agreed as follows:

11

You agree that during the term of your employment by [Cotiviti] and for a period of two (2) years following the termination date of such employment, you will not, either directly or indirectly, (i) solicit any person who is at the time of the solicitation, or was, at any time during the two (2) year period ending on the date on which your employment by [Cotiviti] ends (or shorter period, if applicable), (ii) an employee, agent, or independent contractor of [Cotiviti], (iii) with whom you had business contact in the course of your employment by [Cotiviti], (iv) for the purpose of offering employment to such person within the Territory with an individual or entity which is engaged in providing or selling Competitive Services, (v) for the purpose of providing any services which are substantially similar to the services performed by such person for [Cotiviti].

67.     The parties also agreed and stipulated, at page 7 of the Mosby Agreement, "to the exclusive jurisdiction of the federal or state courts within the State of Connecticut for any action which may be brought under or in connection with this agreement."

68.     Defendant Mosby ignored and violated her obligations to Cotiviti as set forth in the Mosby Agreement.

69.     Specifically, on May 11, 2018, she resigned her employment and did not disclose that she would be working for Equian (in the same geographic location as she worked for Cotiviti).

70.     After learning of Defendant Mosby's intention to join Equian, Cotiviti advised Defendant Mosby by letter dated June 4, 2018, that she had violated the Agreement by taking a position with Equian. A copy of the June 4, 2018 letter is attached hereto as **Exhibit D.**

71.     Cotiviti requested written assurance by June 11, 2018 that Defendant Mosby would not work for a competitor and that she had returned all documents or electronic data relating to Cotiviti.

72.     Defendant Mosby did not respond to the June 4, 2018 letter and made no assurances.

73.     In addition to the breach of the Mosby Agreement, it would be extremely difficult, if not impossible, for Defendant Mosby to perform any duties for Equian without making use of the confidential, proprietary and trade secret information to which she was exposed during her employment at Cotiviti.

74.     The harm that Cotiviti would suffer if Defendant Mosby were permitted to continue her employment at Equian and make use of Cotiviti's confidential, trade secret, and proprietary information would be irreparable. The value of that confidential, trade secret, proprietary information is not readily subject to financial valuation, cannot be easily duplicated, and will result in competitive disadvantage to Cotiviti in the hands of a competitor.

75.     In addition, upon information and belief, Defendant Mosby has solicited and encouraged Cotiviti employees to leave Cotiviti for Equian,

76.     By virtue of the foregoing conduct, Defendant Mosby has violated the Mosby Agreement.

77.     Pursuant to the Mosby Agreement, Defendant Mosby agreed that she would not engage in a competing business as defined therein for a period of two years after separation of employment.

78.     Plaintiffs provided consideration for and fully performed their obligations under the Mosby Agreement by, *inter alia*, employment of Defendant Mosby and providing her with access to Plaintiffs' confidential and trade secret information.

79.     The Mosby Agreement is valid and enforceable under Connecticut law.

80.     The restrictive covenants contained in the Mosby Agreement are necessary and tailored to protect Plaintiffs' legitimate business interests, including but not limited to goodwill, clients, and confidential and proprietary business information. The Mosby Agreement is

reasonably limited to the United States, in light of the fact that Cotiviti is an international company with operations throughout the world.

81.     Defendant Mosby breached her obligations under the Mosby Agreement after resigning from Plaintiffs by engaging in a business in direct competition with Plaintiffs.

82.     Upon information and belief, Defendant Mosby's breaches of these covenants continue to this day, and will continue unless and until she is ordered to abide by the obligations to which she agreed when she accepted the Mosby Agreement.

83.     As a direct result of Defendant Mosby's breaches, Cotiviti is suffering and will continue to suffer irreparable injury, including loss of business expectancies, employees, clients, confidential information, and damage to goodwill, for which a remedy at law is inadequate – as Defendant Mosby expressly acknowledged in the Mosby Agreement. Accordingly, Plaintiffs are entitled to injunctive and equitable relief.

84.     In addition, as a consequence of Defendant Mosby's breaches of the Mosby Agreement, Plaintiffs seek actual, consequential, compensatory, and punitive damages, along with reasonable attorneys' fees and costs, in an amount to be determined at trial.

## COUNT THREE (ALL DEFENDANTS)
### (Misappropriation of Trade Secrets – 18 U.S.C. § 182)

85.     Plaintiffs incorporate the above allegations as if fully set forth herein.

86.     By virtue of their employment with Cotiviti and their performance of responsibilities for Cotiviti, Cotiviti provided Defendants access to and Defendants possessed trade secrets and confidential information of Cotiviti, including, *inter alia*, access to confidential client information relating to Cotiviti's pricing, proprietary procedures, audit concepts, training, and intellectual property, among other information. Cotiviti's trade secrets, particularly its audit processes and concepts, are not generally known to its competitors such as Equian. Cotiviti's

audit concepts are developed through utilization of research and development teams which scour provider contracts, policies, and regulations to develop opportunities for its clients not to issue overpayments. These processes and concepts have been developed by Cotiviti over many years and reflect thousands of hours of work and the expenditure of substantial financial resources invested in generating and assisting its clients. If other companies such as Equian could lawfully obtain access to its audit concepts, client data and information, they would pay millions of dollars for the right to do so and the damage to Cotiviti's business and operations would be irreparable.

87.    These audit processes and concepts stem from unique integration, compilation, research, and cultivation. Defendants were involved in the development and/or execution of Cotiviti's audit concepts.

88.    Cotiviti developed and maintained such information at great time, cost and expense to Cotiviti; such information is maintained on password protected networks accessible only by certain Cotiviti employees with need to use such information on Cotiviti's behalf.

89.    In addition, clients entrust Cotiviti with their highly confidential information, to which Defendants had access.

90.    Cotiviti derives independent economic value from the trade secrets entrusted to Defendants; such information is not generally known or readily ascertainable by proper means by other individuals who can obtain economic value from its disclosure and use, and the information is the subject of significant efforts to maintain its secrecy.

91.    Such information is considered a trade secret under the Federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. §§ 1832, *et. seq*., because Cotiviti derives independent economic value from this information not generally known to the public, the information is not

readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy. 18 U.S.C. § 1839.

92.     Defendants knew, or should have known, that the information, as described: (1) is confidential; (2) was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; (3) was developed or acquired by Cotiviti at great expense and effort; (4) was maintained as confidential and is not generally available to the public and Cotiviti's competitors such as Equian; (5) would provide significant benefit to Equian; and (6) is critical to Cotiviti's ability to conduct its business successfully.

93.     Defendants will actually and inevitably misappropriate Cotiviti's trade secrets and confidential information without Cotiviti's consent. Defendants cannot help but utilize in their new capacities with a competitor the audit concepts, particular client needs, and Cotiviti employee information. Even if Defendants agreed not to disclose any of this information, such agreement would be ineffective because the trade secrets acquired by Defendants during their employment are the exact information needed to effectively perform for Equian.

94.     Moreover, each of the Defendants agreed that: "Upon the termination or expiration of Your employment with Connolly, or upon a written request from Connolly, You agree to return all Confidential Information and Connolly property in Your possession including, all originals, copies, translations, notes, or any other form of said material, without retaining any copy or duplicates thereof, and promptly to delete or destroy any and all written, printed, electronic or other material or information derived from the Confidential Information." **Exhibits A** and **C** at p. 3.

95.     Defendants will be, or have been, unjustly enriched by the misappropriation of Cotiviti's trade secrets and confidential information, and, unless restrained, will continue to use, divulge, inevitably disclose, acquire and/or otherwise misappropriate Cotiviti's trade secrets and confidential information.

96.     Defendants' actual and/or threatened misappropriation has been willful and malicious.

97.     As a result of the actual misappropriation of Cotiviti's trade secrets and confidential information, Plaintiffs have lost business expectancies, trade secrets, and goodwill in amounts which are not readily susceptible to determination, unless Defendants are enjoined and restrained by order of the Court.

98.     In addition, Plaintiffs seek actual, consequential, compensatory, and punitive damages, along with reasonable attorneys' fees and costs, in an amount to be determined at trial.

## COUNT FOUR (ALL DEFENDANTS)
### (Violation of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. §§ 35-50, et. seq. ("CUTSA"))

99.     Plaintiffs incorporate the above allegations as if fully set forth herein.

100.     The actions of Defendants, as set forth herein, constitute a violation of the Connecticut Uniform Trade Secrets Act ("CUTSA"), Conn. Gen. Stat. §§ 35-50, *et. seq*., and the common law.

101.     By virtue of their employment with Cotiviti and their performance of responsibilities for Cotiviti, Cotiviti provided Defendants access to and Defendants possessed trade secrets and confidential information of Cotiviti, including *inter alia*, access to confidential client information relating to Cotiviti's pricing, proprietary procedures, audit processes and concepts, training, and intellectual property, among other information.

102.    Each of the Defendants agreed in their employment contracts as follows: "You acknowledge the protections provided [Cotiviti's] Trade Secrets under applicable law, [including the protections afforded by the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. § 35-50 et seq. (the "Act")], and agree not to disclose or misappropriate any such Trade Secrets for so long as such materials or information constitute trade secrets under the Act. For purposes hereof the term "Trade Secret" is defined in the Act." *See* **Exhibits A** and **C**, at p. 3.

103.    Cotiviti's trade secrets, particularly its audit processes and concepts, are not generally known to its competitors such as Equian. Cotiviti's audit processes and concepts are developed through utilization of research and development teams which scour provider contracts, policies, and regulations to develop opportunities for its clients not to issue overpayments. These processes and concepts have been developed by Cotiviti over many years and reflect thousands of hours of work and the expenditure of substantial financial resources invested in generating and assisting its clients. If other companies such as Equian could lawfully obtain access to its audit concepts, client data and information, they would pay millions of dollars for the right to do so and the damage to Cotiviti's business and operations would be irreparable.

104.    On information and belief, the Defendants have used and otherwise misappropriated and continue to misappropriate Plaintiffs' proprietary and trade secret materials and information, including Cotiviti's pricing, proprietary procedures, audit processes and concepts, training, and intellectual property, among other information.

105.    As explained *supra*, the information used by Defendants is of extreme importance and value to Plaintiffs, which have put in great effort, time, and cultivation of their proprietary processes and information.

106.    These processes and information are closely held and not known outside Plaintiffs' business.

107.    These processes and information are not readily ascertainable by outsiders.

108.    These processes and information are only given to those parties absolutely necessary in order to preserve the secrecy of said information.

109.    Defendants acquired these trade secrets by improper means or under circumstances giving rise to a duty to maintain their secrecy and used them to the detriment of Plaintiffs.

110.    Plaintiffs have sustained damages and injury as a result of Defendants' misappropriation of Plaintiffs' trade secrets and have damaged the integrity of Plaintiffs' confidential information and business integrity.

111.    Defendants will inevitably use this information for their own benefit.

112.     Defendants' conduct constitutes a violation of CUTSA.

113.    Plaintiffs will also suffer irreparable damage and injury due to Defendants misappropriation of the trade secret information if Defendants are not enjoined from the use of such information. Plaintiffs have no adequate remedy at law to compensate for the harms caused by the acts and conduct of Defendants.

114.    Defendants' conduct has caused and stands to cause Plaintiffs substantial and immediate irreparable injury, including the actual and potential loss of client relationships and goodwill, as well as confidential, proprietary, and trade secret information.

115.    As a result of the misappropriation of Cotiviti's trade secrets and confidential information, Plaintiffs have lost business expectancies, trade secrets, and goodwill in amounts

which are not readily susceptible to determination. Plaintiffs will continue to suffer irreparable harm unless Defendants are enjoined and restrained by order of the Court.

116.    Defendants' misappropriation of Cotiviti's trade secrets and confidential information was and is willful and malicious and resulted in Defendants being unjustly enriched.

117.    In addition, Plaintiffs seek actual, consequential, compensatory, and punitive damages, along with reasonable attorneys' fees and costs, in an amount to be determined at trial.

## COUNT FIVE (ALL DEFENDANTS)
### (Violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110, et. seq. ("CUTPA"))

118.    Plaintiffs incorporate the above allegations as if fully set forth herein.

119.    The acts and conduct of Defendants alleged above is unethical, unscrupulous, unfair and deceptive, and constitutes an unfair method of competition or trade practice in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110, *et. seq*.

120.    In particular, Defendants' willful disregard of their obligations under their employment agreements with Cotiviti, including, but not limited, the disregard of non-competition agreements, is unethical and unfair.

121.    In addition, Defendants' misappropriation of Cotiviti's proprietary information, and use of that information with a direct competitor is unethical and unfair.

122.    Cotiviti is a person within the meaning of Conn. Gen. Stat. §§ 42-110a(3) and 42-110g(a) entitled to bring an action under CUTPA.

123.    At all relevant times, Cotiviti was a person acting in the conduct of trade or commerce within the meaning of CUTPA, both within and outside of the State of Connecticut.

124.     The foregoing actions of Defendants are unethical, unscrupulous, and offensive to public policy, and constitute unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of CUTPA.

125.     Defendants engaged in the unfair and/or deceptive acts and practices willfully and knowingly.

126.     As a result of the foregoing unfair and deceptive acts and practices, Cotiviti has suffered an ascertainable loss within the meaning of Conn. Gen. Stat. § 42-110g(a) and has suffered, and will continue to suffer, damages in an amount to be determined at trial.

127.     Defendants' violation of CUTPA was carried out of the purpose of competing unfairly with Plaintiffs.

128.     The actions of Defendants, as set forth herein, constitute a violation of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. §§ 35-50, *et. seq*., and the common law.

129.     Plaintiffs seek actual, consequential, compensatory, treble, and punitive damages, along with reasonable attorneys' fees and costs, in an amount to be determined at trial.

130.     Pursuant to Conn. Gen. Stat. § 42-110g(c), Plaintiffs will give due notice of its claims to the Attorney General of the State of Connecticut and to the Commissioner of Consumer Protection for the State of Connecticut.

## COUNT SIX (ALL DEFENDANTS)
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

131.     Plaintiffs incorporate the above allegations as if fully set forth herein.

132.     Pursuant to their employments agreements, Defendants owed Plaintiffs a duty of good faith and fair dealing in the performance of their obligations under the agreements.

133.    Plaintiffs reasonably expected to receive benefits pursuant to the employment agreement by virtue of Defendants' promises to abide by the terms of their respective employment agreements.

134.    Defendants breached their duty of good faith and fair dealing by acting in bad faith, including, but not limited to, the acts, omissions and statements of Defendants specifically alleged above and incorporated herein, to injure Cotiviti's right to receive the benefits due to it pursuant to the Agreement.

135.    By virtue of the foregoing, Plaintiffs have suffered, and continue to suffer, injuries and damages for which Defendants are liable.

## PRAYER FOR RELIEF

WHEREFORE, by virtue of the acts and conduct complained above, Cotiviti demands judgment in its favor and against Defendants for preliminary and permanent injunctive relief and damages in connection with the above, and respectfully requests:

1.    A preliminary injunction enjoining Defendants, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of Equian, from:

a. breaching any of the terms of the employment agreements, including but not limited to the non-disclosure, non-solicitation, and non-competition covenants;

b. using, disclosing, or transmitting for any purpose, including the solicitation or conducting of business or initiation of any contact with Cotiviti's clients, the information contained in the records of Cotiviti, or other information pertaining to Cotiviti's clients, including, but not limited to, the names,

addresses, email addresses, personal data, and financial information of the clients;

c. being employed by and/or working with Equian in any capacity; and

d. destroying, erasing, or otherwise making unavailable for further proceedings in this matter, any records or documents (including data or information maintained in computer files or other electronic storage media) in Defendants' possession, custody, or control which were obtained from, or which contain information derived from, any Cotiviti records, which pertain to Cotiviti's clients, or which relate to any of the events alleged in the Complaint in this action.

2. An order requiring Defendants, and anyone acting in concert or participation with them, including counsel, and any agent, employee, officer, or representative of Equian, to return to Cotiviti's counsel any and all Cotiviti records or information, whether in original, computerized, handwritten, or any other form, and not retain any copies;

3. Actual, compensatory, and consequential damages in an amount to be proven at trial;

4. Attorneys' fees and costs pursuant to the common law and Conn. Gen. Stat. §§ 35-53(b) and 42-110g(d);

5. All damages, including treble and punitive damages, pursuant to the common law and Conn. Gen. Stat. §§ 35-53 and 42-110g(a);

6. Costs and expenses incurred herein, including reasonable attorneys' fees and interest; and

7. Any other relief the Court deems appropriate and proper.

PLAINTIFFS,
COTIVITI HOLDINGS, INC. AND
COTIVITI USA, LLC

By  /s/ *Cullen Guilmartin*
Cullen Guilmartin (ct27667)
Joseph J. Blyskal (ct28055)
Shannon M. Walsh (ct30219)
Gordon & Rees LLP
95 Glastonbury Blvd., Suite 206
Glastonbury, CT 06033
Phone: (860) 278-7448
Fax: (860) 560-0185
Email: cguilmartin@grsm.com
Email: jblyskal@grsm.com
Email: swalsh@grsm.com

Dated: July 3, 2018